**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| DANIEL TECLAB and YAMANE GABRAKERSTOS, d/b/a T&T SUPERMARKET, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ADT SECURITY SERVICES, INC., <br><br> Defendant . | 1:05-cv-0627-WSD |

**ORDER**

This matter is before the Court on Defendant ADT Security Services, Inc.'s ("Defendant") Amended Motion for Summary Judgment [9].[1]

**I.   BACKGROUND**

Defendant is a security company which provides alarm systems and monitoring for its customers. On January 14, 2002, Plaintiffs Daniel Teclab and Yamane Gabrakerstos (collectively "Plaintiffs") entered into a five-year contract with Defendant to provide these services at their place of business, T&T

---

[1] On April 20, 2005, Defendant withdrew its original Motion for Summary Judgment filed on March 7, 2005.

Supermarket, Inc. ("T&T").  (See Commercial Sales Agreement (the "Agreement"), attached as Ex. A to Def.'s Am. Mot. for Summ. J.)

Plaintiffs allege that Defendant failed to notify Plaintiffs or any of their employees or agents of an alarm at T&T on January 21, 2004.  (Pls.' Statement of Facts ¶ 3.)  Plaintiffs further contend that a subsequent break-in on the same night resulted in an apparent arson which destroyed the building.  (Id. ¶ 4.)

On or around May 5, 2004, about four and one-half months after the fire, Plaintiffs contacted Defendant to obtain, among other information, a copy of the Agreement.  (Pls.' Statement of Facts ¶ 7.)  The same day the request was made, an employee of the Defendant, Ms. Isabel Pinto, faxed to Plaintiff Teclab a two-page facsimile.  The first page was a cover page stating "These are the copies of your contract -- if you have any questions please contact me @ [Defendant's contact numbers]."  (May 5, 2004 Facsimile, attached as Ex. D to Pls.' Resp. to Def.'s Am. Mot. for Summ. J.)  The second page was one page of the four-page Agreement.  (Id.)

Four months later, in September 2004, Plaintiff Teclab hired a law firm to represent T&T.  Myah Rainey ("Rainey"), a legal assistant with the firm, was assigned to contact Defendant to inform it of the arson and to initiate the

processing of Plaintiffs' claims against Defendant.  (Pls.' Statement of Facts ¶ 17.)  The next month, on October 28, 2004, Rainey called Defendant's legal department to begin processing of Plaintiff's claim.  A couple of days later, November 1, 2004, Rainey was told that the claim was being handled by a third-party adminstrator, Sedgewick Claims Management ("Sedgewick").  (Pls.' Statement of Facts ¶¶ 18-20.)  The following day, on November 2, 2004, Rainey called Sedgewick and was informed that Plaintiffs' claim had not yet been assigned to an adjuster.  Two days later, Rainey sent letters via certified mail to Defendant's legal department and to Sedgewick, requesting information regarding any insurance policies providing coverage to Defendant for losses suffered by Plaintiffs.  (Id. ¶ 22.)  On November 24 and 29, 2004, Rainey called Defendant's legal department and Sedgewick and spoke to a manager who informed her that he would be responding to her request for insurance information and that the claim had been assigned to Liza Matyas ("Matyas").  (Id. ¶¶ 23-24.)

A few days later Rainey left her employment at the law firm.  (Id. ¶ 25.)  On December 21 and 28, 2004, Abdi Ammari ("Ammari"), an attorney with the firm, followed up on Rainey's inquiries by leaving a message asking someone at Sedgewick to return his call.  Sedgewick did not follow up.  (Id. ¶¶ 26-29.)

The Agreement between Plaintiffs and Defendant contains a one-year limitation-of-action clause, which states: "NO SUIT OR ACTION SHALL BE BROUGHT AGAINST ADT MORE THAN ONE (1) YEAR AFTER THE ACCRUAL OF THE CAUSE OF ACTION THEREFOR." (Agreement at 4, ¶ E.) Plaintiffs contend their copy of the Agreement was at T&T's premises and was destroyed in the fire. (Pls.' Statement of Facts ¶ 5.)

On February 2, 2005 -- one year and twelve days after the fire -- Plaintiffs filed this action in the State Court of Fulton County, Georgia. Plaintiffs assert claims against Defendant for negligence, breach of contract, punitive damages and attorneys' fees. On March 7, 2005, the case was removed to this Court on the basis of diversity jurisdiction. Defendant moves for summary judgment on the grounds that Plaintiffs failed to bring this action within one year of the alleged fire, as required by the Agreement. Plaintiffs contend Defendant is equitably estopped from asserting the limitation-of-action clause as a defense to Plaintiffs' suit. The question before the Court is whether the doctrine of equitable estoppel applies.

## II.  DISCUSSION

### A.  Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999). Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial. Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999). The non-moving party "need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings." Id.

The Court must view all evidence in the light most favorable to the party opposing the motion and must resolve all reasonable doubts in the non-movant's favor. United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am., 894 F.2d 1555, 1558 (11th Cir. 1990). "[C]redibility determinations, the weighing of evidence, and

the drawing of inferences from the facts are the function of the jury . . . ." Graham, 193 F.3d at 1282. "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." Herzog, 193 F.3d at 1246. But, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

      B.      Defendant's Motion for Summary Judgment

The parties do not dispute that Plaintiffs filed suit more than one year after accrual of their claim or that the Agreement contains a one-year limitation-of-action clause. There also is no dispute that reasonable contractual limitations on the right to sue are enforceable under Georgia law. See, e.g., Rabey Elec. Co., Inc. v. Housing Auth. of Savannah, 378 S.E.2d 169, 170 (Ga. Ct. App. 1989) ("Georgia courts have permitted parties to contract as to a lesser time limit within which an action may be brought so long as the period fixed be not so unreasonable as to raise a presumption of imposition or undue advantage in some way.") (citations and quotation omitted). Because this action was filed outside of the one-year limitation on filing suit, the dispositive issue before the Court is whether equitable estoppel prevents the Defendant from raising the limitation as a defense to Plaintiffs' suit.

See generally Smith v. Direct Media Corp., 544 S.E.2d 762, 764 (Ga. Ct. App. 2001) ("[W]here a party asserts that he has a defense to contractual liability, he may, by reason of his conduct, be estopped from relying on this defense."); D.L. Lee & Sons, Inc. v. ADT Sec. Sys., Mid-South, Inc., 916 F. Supp. 1571 (S.D. Ga. 1995), aff'd, 77 F.3d 498 (11th Cir. 1996).  A defendant's conduct must meet specific criteria before equity will deny the right to assert a contract term negotiated by parties to an agreement.

For equitable estoppel to apply, the party against whom estoppel is being asserted must have:

> (1) [engaged in] conduct amounting to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention, or at least expectation, that such conduct shall be acted upon by the other party; (3) knowledge, actual or constructive, of the real facts.

Bell v. Studdard, 141 S.E.2d 536, 540 (Ga. 1965).  The party asserting estoppel must also establish "(1) lack of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) action based thereon

of such a character as to change his position prejudicially." Id.[2]  "Since the whole doctrine of estoppel is a creature of equity and governed by equitable principles, it necessarily follows that the party who claims the benefit of an estoppel must not only have been free from fraud in the transaction, but must have acted in good faith and reasonable diligence; otherwise no equity will arise in his favor." Travelodge Corp. v. Carwen Realty Co., 158 S.E.2d 378, 380 (Ga. 1967) (citations and quotation omitted).  The party seeking to estop has a heavy burden.  He must show the defendant engaged in culpable conduct.  Negligence or poor business practices is not enough.

Here, Plaintiffs argue they "raise a factual issue (for determination by the trier of fact) as to whether Defendant ADT's actions here caused and/or contributed to Plaintiff's 'delay' in bringing suit against Defendant."  (Pls.' Resp. to Def.'s Am. Mot. for Summ. J. at 4-5.)  Plaintiffs complain primarily of Defendant's response to Plaintiff Teclab's request on May 5, 2004, for a copy of the Agreement, and the law firm's repeated, unsuccessful efforts to resolve Plaintiffs' claims.

---

[2] O.C.G.A. § 24-4-27 provides:  "In order for an equitable estoppel to arise, there must generally be some intended deception in the conduct or declarations of the party to be estopped, or such gross negligence as to amount to constructive fraud, by which another has been misled to his injury."

Plaintiff Teclab requested a copy of the Agreement on or around May 5, 2004. In response, Defendant faxed him a two-page transmission. The cover page of the transmission stated "These are the copies of your contract -- if you have any questions, please contact me @ [contact numbers]." The second page of the transmission was the first page of the four-page Agreement. The limitation-of-action clause is on the fourth page. Plaintiffs' request for the Agreement and Defendant's response is not sufficient to establish equitable estoppel. Plaintiffs do not present any evidence and do not even argue that they ever examined the partial contract, relied on its contents, considered it to be the entire Agreement, or that the filing of the lawsuit after the expiration of one year was influenced by their mistaken belief that the partial contract was the complete Agreement. The one page of the Agreement faxed to Plaintiffs does not include the signature of any party.[3] The Agreement was obviously incomplete and no reasonable person could believe the partial contract was the entire Agreement. That the Agreement was obviously incomplete means no reasonable jury could find that Plaintiff acted with reasonable

---

[3] To the extent Plaintiffs claim they relied on the statement on the cover page that it was "the contract," the cover page further provides that "copies" were included. Plaintiffs could not reasonably rely on the attached one page as "copies" of the entire Agreement.

diligence by not pursuing its request for a complete Agreement copy. There also is no evidence Defendant intended to delay Plaintiffs' receipt of the Agreement or to cause them to assert an untimely claim. Plaintiffs' receipt of the partial contract did not mislead Defendant, Plaintiffs did not exercise reasonable diligence when they received an obviously incomplete Agreement, there is no evidence that the partial contract caused Defendant to file suit after the limitation period had elapsed and there is no evidence Defendant acted with the intention that Plaintiffs miss their filing deadline. Plaintiff Teclab's initial request for a copy of the Agreement and Defendant's response cannot be the basis of a claim of equitable estoppel.

Plaintiffs also argue repeated efforts by Plaintiffs' law firm to have their claims against Defendant attended to and resolved allow for equitable estoppel of Defendant's contractual-limitation defense. These attempts to contact Defendant were not directed at obtaining a copy of the Agreement, but instead were focused on resolving Plaintiffs' claims against Defendant and obtaining information regarding Defendant's applicable insurance coverages. Even if Defendant could have responded to Plaintiffs more completely and diligently, any failures on its part in this regard do not give rise to a claim of equitable estoppel of Defendant's limitation-of-action defense. Plaintiffs have not produced any basis for suggesting

Defendant acted fraudulently, misled Plaintiffs, that Plaintiffs relied on Defendant's conduct, or that but for Defendant's conduct Plaintiffs would have initiated suit before the expiration of the limitation-of-action period.

In D.L. Lee & Sons, Inc., the court held under similar circumstances that a contractual one-year limitation-of-action provision barred plaintiff's suit. 916 F. Supp. at 1579.[4] The agreement between the parties in D.L. Lee contained the same limitation-of-action clause. The plaintiff claimed its version of the agreement was destroyed in a fire and also claimed that defendant failed to provide it with a copy of the entire contract, but instead provided only the first page when requested. The court held defendant was not estopped from asserting its contractual limitation-of-action defense because (i) there was no evidence that defendant acted in any way to delay plaintiffs in bringing suit, (ii) plaintiffs were imputed with knowledge of the contract they signed, and (iii) there was no evidence of fraud or fraudulent inducement. D.L. Lee & Sons, Inc., 916 F. Supp. at 1579. Accord Par Fait

---

[4] In D.L. Lee, the court applied the doctrine of equitable estoppel as described in Keefe v. Bahama Cruise Line, 867 F.2d 1318, 1323 (11th Cir. 1989), which involved an alleged tort committed aboard a ship sailing in navigable waters. The court in Keefe applied general maritime law, but the differences between general maritime law and Georgia law for equitable estoppel are not material in this case.

Originals v. ADT Sec. Sys., Northeast, Inc., 184 A.D.2d 472, 586 N.Y.S.2d 2 (1992) ("There is also no merit to plaintiffs' claim that since they were unaware of the contract at the time of the loss and were awaiting a copy from defendant before commencing this action, defendant should be equitably estopped from asserting the contractual one-year limitations period.").

Because Plaintiffs failed to bring this action within one year[5] of the fire as required by the Agreement and Defendant is not estopped from asserting the contractual limitation-of-action defense, summary judgment for Defendant on Plaintiffs' claims is appropriate.

## III.  CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Amended Motion for Summary Judgment [9] is **GRANTED**.

---

[5]  That Plaintiffs missed the one-year requirement by just several days is unfortunate, but the Court's obligation is to interpret contracts and the law fairly and consistently.

**SO ORDERED**, this 4th day of November, 2005.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE